City of New York, Plaintiff, *v.* New York Disposal Corporation et al., Defendants.

(Supreme Court, New York Special Term, July, 1917.)

Contracts — nature of — with city of New York — removal and disposition of garbage — actions — pleading.

Where by a contract with the city of New York for the removal and final disposition of all garbage collected by its department of street cleaning within certain boroughs, which the city agreed to deliver to certain places and in a specified manner, the contractor agreed to pay to the city as " consideration for the privilege to perform the work " certain sums at various times during the life of the contract, the city on failure of the contractor to pay the stipulated consideration, as provided, is entitled to maintain an action to recover the same, though by the contract the city does not agree to deliver any specific amount of garbage and the contractor does not agree to pay either the value or an agreed price for the garbage delivered to it which it can only dispose of in the manner provided by the contract.

The nature of such a contract discussed and explained.

A counterclaim for damages for the city's failure to deliver to defendants all the garbage collected in said boroughs and a further counterclaim that plaintiff in order to induce defendants to assume the obligation of the contract falsely and fraudulently represented that the amount of garbage which had been collected by the department of street cleaning and had been delivered during the year previous to the making of the contract in suit was over a certain amount, dismissed upon the merits.

Action upon a contract.

Lamar Hardy, corporation counsel, for plaintiff.

Cravath & Henderson, for defendants.

Lehman, J. The city of New York, on the 12th day of August, 1913, entered into a written contract

for the removal and final distribution of all garbage collected by the department of street cleaning within the boroughs of Manhattan, The Bronx and Brooklyn, which the city thereby agreed to deliver to the places and in the manner therein specified. The contractor agreed to pay to the city as " consideration for the privilege to perform the work under this contract " for the first year $62,500, for the second year $87,500, and for the three succeeding years $112,500. The contract, with the consent of the city, was assigned to and assumed by the defendant New York Disposal Corporation. On the 2d day of January, 1914, the New York Disposal Corporation entered upon the performance of its work and paid the stipulated consideration monthly until the 15th day of October, 1914. On that day it refused to pay the installment which then became due, and has refused to pay any installments coming due thereafter. The New York Disposal Company denies that the city has performed all the covenants and conditions of the said contract by it to be performed, and sets up two counterclaims. In the first counterclaim it is alleged that by the terms of the contract the city of New York agreed to deliver to the New York Disposal Corporation all the garbage collected by the department of street cleaning of the city of New York and by others authorized to collect the same within the boroughs of Manhattan, The Bronx and Brooklyn, but has failed to deliver to it all such garbage and has failed to deliver to it 240,000 tons of said garbage, to its damage in the sum of $696,000. The second counterclaim alleges that the plaintiff, in order to induce the defendant to assume the obligation of said contract, falsely and fraudulently represented that the amount of garbage which had been collected by the department of street cleaning and had been delivered during the year 1912 to

the company then having the contract for the final disposition of such garbage was over 345,000 tons, and that in truth and in fact not over 270,000 tons had been collected by the said department of street cleaning during the year 1912, and that the defendant was thereby damaged in the sum of $300,000. The contract in suit is peculiar in that it is not strictly a contract for services nor a contract of sale and delivery. Its purpose was to secure the final disposition of the garbage collected by the city and delivered at its dumps. The New York Disposal Corporation agreed to perform this service and to maintain in operation and working order a plant of the capacity ample to dispose of at least 2,000 tons of garbage in each twenty-four hours. So far the contract is evidently for services to be performed for the benefit of the city. Ordinarily, however, a party must pay for services to be performed for its benefit, whereas in this case the contractor agreed to pay to the city a large sum of money annually for the " privilege to perform " its work. Obviously, therefore, the parties must have assumed that the defendant would, in some manner, derive a profit from the performance of these services, and the city is expressly or impliedly obligated to deliver to the defendant the garbage of which the defendant agreed to make final disposition. The proposal for bids states that " the records of the department of street cleaning show that the amount of garbage delivered to the present contractor for this work " was approximately certain amounts thereinafter set forth, but the contract provided that the defendant should have no claim " in case the daily amount of garbage delivered as aforesaid shall be materially or in any degree greater or less than the quantity estimated, stated or indicated in the proposal for bid or estimate for this

contract, nor shall anything herein contained be deemed or construed to imply or impose any obligation on the part of the city to deliver to the contractor any specific amount of garbage whatsoever, it being understood, however, that the city will deliver to the contractor at the dumps aforesaid all the garbage which may be collected by the carts of the department of street cleaning as well as by private carts, so far as they can be controlled by the said department." The defendant now contends that this clause of the contract makes the contract one for the sale and delivery of all such garbage, and that the plaintiff must show, as a condition precedent to any recovery, full performance on its part, and if only substantial performance be shown the plaintiff can recover only upon a *quantum meruit* for the value of the amount actually delivered. This contention seems to me absolutely without force. In the first place I do not think that the contract is really one for sale and delivery, but rather one for services for which the defendant was to be compensated through the profits from the garbage which the plaintiff agreed to deliver and which the defendant agreed to dispose of. The plaintiff has shown that it delivered to the defendant at the dumps large amounts of garbage collected by its own carts. The defendant never attempted to rescind this contract, but accepted the garbage so delivered, removed it to its disposal plant and has derived large profits from such acceptance, even if it pays the stipulated amount. Though it protested that it was entitled to more garbage, it knew that even if the city heeded its protests and thereafter collected more garbage the city could not deliver to it the garbage theretofore not collected and not delivered. It was therefore bound to pay both at common law and under the Sales Act for at least the garbage received, even though the

contract should be construed as one for the sale of goods. Having accepted the delivery of a part of the amount called for, knowing that the plaintiff could not thereafter deliver the amount which it should then have delivered, the defendant cannot refuse to pay for the amount accepted. Nor can the defendant claim that the plaintiff should recover only for the value of the garbage actually delivered. The plaintiff never agreed to deliver any specific amount of garbage and the defendant never agreed to pay either the value or an agreed price for the garbage delivered to it. It agreed to dispose of the garbage delivered to it as well as to pay a stipulated sum for the privilege of doing the work, and the agreed amount of its payment under the contract in nowise represents the agreed value or price of the garbage. The garbage so delivered to it never became its property in the sense that it could sell or dispose of it as it saw fit, but, on the contrary, it could only dispose of it in the manner provided by contract. Under these circumstances there could be no proof of the market value of the garbage in New York city, but if the value of the garbage is at all material it could only be determined by other criteria, and the best criterion would be the profit which could be made from the garbage. The proof, however, shows that such profits are so large that the value so calculated of the garbage actually delivered would be far greater than the amount now demanded by the plaintiff. It seems to me quite evident that the contract was not one for the sale of goods, but one for services, in which the compensation for the work done by the defendant was to be derived from the incidental profits of the work, and both parties so understood. While the plaintiff has not raised this point, I question seriously whether the contract would be valid if it were for the sale of the city's personal property, for

apparently the charter provisions in regard to such contract have not been complied with. In any event, it is quite evident to me that it was an indivisible contract on both sides, and when either party accepted part performance knowing that, so far as concerns performance up to that time, no full performance was possible, it could not avail itself of past breaches as a defense to an action on the contract, but could use such breaches only as the basis of a counterclaim. It follows that the plaintiff is entitled to recover the agreed payments under the contract, subject only to such counterclaim as the defendant may prove. I cannot, however, find that the defendant has made out its counterclaims except possibly for a nominal amount. The defendant claims that the city has failed to perform its contract in various respects, which I shall take up separately, but before considering each of these claims it is necessary to determine exactly what the city agreed to do under its contract. As stated above, the contract provides that '' the city will deliver to the contractor at the dumps aforesaid all the garbage which may be collected by the carts of the department of street cleaning as well as by private carts, so far as they can be controlled by the said department.'' The specifications further provide that '' wherever the term ' garbage ' is used in this contract it shall be taken to mean swill and every accumulation of food waste, of both animal and vegetable matter, liquid or otherwise, that shall be collected by the carts of the department of street cleaning or by carts duly authorized to collect the same, and delivered at the dumps and containing not more than five per centum by weight of other refuse.'' The defendant claims that all parts of this clause except the words '' it shall be taken to mean swill and every accumulation of food waste, of both animal and vegetable

matter, liquid or otherwise," are really provisions inserted for its benefit and are not part of the definition of garbage. There is a great deal of force in this contention. The contract is, on its face, one for the final disposal of " garbage " by the defendant, and it fixes the limits of the " garbage " which the defendant was obliged under its contract to accept and dispose of. On the other hand, the plaintiff expressly agreed to *deliver to the defendant at the dumps* all the " garbage " which may be collected by the department of street cleaning, etc., and therefore that part of the definition which describes garbage and material " delivered at the dumps " can have no application to the city's obligation. Obviously it was obliged to deliver to the dump all materials which otherwise come within the definition and which are collected by the carts of the department of street cleaning, etc. Similarly, inasmuch as the city under this contract required the defendant to make large expenditures for the maintenance of a plant and to pay to the city large sums of money for the privilege of doing the work, a fair construction of the contract would require the city not only to deliver such materials collected by the carts at the dump, but would also require it to use reasonable efforts to cause the carts to make such collection. It could certainly not discontinue its former practice of causing such materials to be so collected and yet hold the defendant to its onerous obligations under the contract. A more difficult question, however, arises in regard to the words " and containing not more than five per centum by weight of other refuse." The defendant was, of course, not obligated to accept materials containing more than this amount of other refuse; consequently, if the plaintiff was obliged to deliver to the defendant all swill and every accumulation of food waste, regardless of any admix-

ture of other refuse collected by the carts of the department of street cleaning, it would be obliged to remove all other refuse from such food waste after collection or, at its peril, secure a perfect separation of food waste and other refuse before such collection. Such a construction would plainly be so unreasonable that even the defendant does not ask it. There are and were at the time the contract was made ordinances in effect requiring a separation of food waste from other refuse in the built up portions of New York, and it appears that under previous contracts the city had made efforts to enforce such separation. The defendant had a right to expect that the city would make reasonable efforts to secure such separation, but, if in spite of reasonable efforts the carts collected food waste containing a considerable proportion of refuse, the city was certainly not bound to make such separation itself. The obligation of the city under the contract was therefore to deliver to the defendant at the dumps all food waste containing less than five per centum of other refuse collected by the carts of the department of street cleaning, as well as by private carts, so far as they can be controlled by that department, and to make reasonable efforts to cause householders to keep their food waste separate from other refuse and to make reasonable efforts to collect all such refuse through their carts. The defendant claims that this obligation was breached by the failure of the city to deliver to it food waste gathered by private carts and delivered by them to other places out of the city. These carts were licensed by the board of health and had the right under the ordinances made by the board of health to make such deliveries. These carts were not controlled by the department of street cleaning, and such deliveries were lawful. The defendant, however, claims that since the contract was made

with the city, and the board of health is a city agency, it had no right to license such carts or to pass such an ordinance. Even if I assume that the board of health is strictly a city agency, the contract provides only that garbage collected by carts controlled by the department of street cleaning, and not by other city departments, should be delivered to the defendant. Moreover, in the absence of any valid ordinances to the contrary, any person has a right to sell his garbage or food refuse as he desires, so long as he does not interfere with the comfort and health of his neighbors. It is true that the board of health may, in the interests of the public health, restrict this right, but any restrictive ordinance is valid only when passed by it to conserve the public health. If the board of health assumed to pass such ordinance not for this purpose, but to increase the revenue either of the city or the contractor, such an ordinance would be void. In spite, therefore, of the fact that the commissioner of street cleaning who signed this contract represented to the defendant that he expected to arrange that the board of health should refuse permission thereafter to private carts to transport food refuse to purchasers outside of the city, such representation or promise can in nowise bind the city. It follows that the city has in nowise breached the contract by failing to take measures which would force private carts to cease from collecting food waste and delivering it to places outside the city. The defendant further claims that a large amount of food waste has been mixed with ashes and refuse and not delivered to it as garbage, but instead placed in ash carts and delivered at ash dumps. As stated above, there are and were ordinances in effect requiring such separation, but the city has not expressly or impliedly agreed that it will secure such separation, and its full obligation has been

performed when it makes reasonable efforts to secure such results. I have taken a mass of testimony to determine how far the city has secured an effective separation in the built up parts of the city. I have listened to that testimony with care and then read it over again and analyzed it. The net result of that testimony is that according to the city's witnesses an ash dump is about as clean and sweet smelling as the primeval woods; whereas according to some of the defendant's witnesses the ash dumps are masses of decayed vegetables, bones and fat, with occasional oases of clean ashes from factories. As a matter of fact, I believe that the ashes contain just about the amount of food refuse that any observant citizen would expect. In some districts of the city the householders have apparently been educated up to the point where they keep the food waste and other refuse separate, as required by law. Of course, even in such districts a careless or ignorant or lazy housekeeper will occasionally transgress, but even the defendant practically concedes that in such districts the separation is satisfactory. It contends, however, that since the city can keep the amount of garbage which is mixed with the ashes in those districts to a small proportion of the whole, it should be required to see that the law is similarly enforced in all districts. In other districts, however, with inhabitants unaccustomed to order and public cleanliness, the difficulty is infinitely greater. Garbage is notoriously thrown into the street, and it is difficult to impress upon these inhabitants the importance of any separation. The result naturally is that in such districts a mixture of ten per cent of garbage in the ashes is not infrequent. By constant vigilance this amount may be reduced and by a relaxation of vigilance it may be increased, but the mere fact that even a very considerable amount

of garbage is mixed with the ashes in such districts is not conclusive evidence of a lack of reasonable efforts on the part of the street cleaning department. The defendant, however, has sought to supply this proof in two ways: *First,* by producing evidence to show a reduction in the supervising force and a change in the form of organization of the street cleaning department which it believes tended to reduce its efficiency in this regard; *second,* by showing a large number of individual violations of the sanitary ordinances and of the rules of the department acquiesced in or committed by drivers of carts. The street cleaning department and its organization is in charge of the commissioner, and he is responsible not only for its work, but for the economy with which the work is conducted. It would be contrary to public policy that one commissioner should be allowed to enter into a contract with a third party which would interfere with the discretion of his successor in carrying on the work which, under the charter, is in his charge. No contract should be construed to cause this effect. The contract under consideration in no manner required the present commissioner to carry on the work of his department in the same manner as it was previously carried on, and, even though he has reduced the number of assistant foremen and changed the work of the separation squad, there is no presumption that such economies caused any lessening of efficiency, nor is there any evidence to that effect. On the contrary, it would appear that the separation at the present time is as good as it was formerly. Even if, however, the result of these changes has been a decrease in efficiency, the city would still not be responsible in damages for such changes. The commissioner must use his discretion as to such changes, and unless there has been such an abuse of discretion that the court can

say he has not made reasonable efforts to enforce the law it cannot hold that the city has thereby breached its contract. I have not overlooked in this respect that in the present contract the contractor paid for the privilege of doing the work, while in previous contracts the city paid the contractor in addition to the profits he made in handling the garbage, but I cannot see that this change in any way increases the city's obligation. It merely shows that the defendant expected that if the city carried out its obligations it would make a considerable profit, and the proof shows that its expectations have been quite realized. I further cannot find that the individual cases of infraction of the law show a failure of reasonable effort on the city's part to cause the householders to deliver their garbage free from other refuse. It is true that there have been many such infractions, but, on the other hand, there is also proof of diligent effort on the part of the city to reduce such infractions. Doubtless, if a large number of police were kept constantly at work enforcing the sanitary ordinances, the number of infractions would be reduced, but in view of the proof of the large number of warnings and arrests I am constrained to find that the defendant has failed to show any lack of reasonable effort on plaintiff's part to enforce the law. The defendant also claims that, because it has shown that some years before the contract was made a commissioner ordered food refuse in street sweepings to be separated from other sweepings, the present commissioner was bound to follow the same course. It appears that this order has not been followed for several years, and was not in existence when the contract was made. It does not appear that the contractor ever knew of such an order or custom; it does not appear that such an order served any

practical purpose, and it does not appear that, if followed, the contractor would have profited by the additional cabbage leaves and potato peelings found in the street sweepings if they had been delivered to it.    Finally, the defendant claims that it has shown that drivers of carts put into the carts on numerous occasions cans of mixed garbage and ashes, and even threw cans of clean garbage into the ashes, and the plaintiff is responsible for these acts on the theory of *respondeat superior*.    I do not think that this doctrine can be applied to the acts of the drivers in taking the cans of mixed garbage.    The garbage so collected by the carts was not garbage which the defendant was obliged to receive or which the plaintiff could deliver to it.    The defendant therefore did not breach the contract merely by taking these cans and delivering them to the ash contractors.    The acts of the drivers in taking them is material only as bearing upon the question of whether the defendant used reasonable efforts to obtain a separation, and they are not sufficient, I think, even with the other evidence, to show a failure in this respect.    On the other hand, if the drivers threw cans of clean garbage on the ashes and these ashes were delivered to the ash contractor, that in itself constitutes a breach of contract for which the city would be liable, for it has agreed to deliver to the defendant all clean garbage collected by its carts.    On the other hand, undoubtedly both parties expected that such acts must occasionally occur, and I cannot infer from this testimony that such acts were general nor can I form any estimate of how often they occurred.    I can therefore allow damages, if at all, only for the cases where such acts were proven.    In the cases proven, the loss to the defendant would not amount at the utmost to over a ton or so, and its damages would therefore be nominal.

I hardly think that the defendant is claiming damages for these particular breaches, or desires a finding of nominal damages on his counterclaim amounting to a couple of dollars. The evidence shows that after the ashes, mixed as they were with some small proportion of garbage, were delivered at the dumps, scavengers were permitted to remove therefrom bones and fat, and the defendant claims it is entitled at least to an allowance for that. I cannot see upon what theory such an allowance can be made. The city could not deliver to the defendant under its contract the bones and fat mixed with the ashes, and it was not bound to separate them itself. If, after collecting them and delivering them at the dumps, it permitted other persons to separate and take them away, there is nothing that I can find in the contract which requires the city to deliver them to the defendant. It is true that the contract with the ash contractors made by the city does not permit the contractor or the scow trimmers to appropriate or remove bones and fat, and at first I was under the impression that this fact showed that the city accepted the view that the bones and fat belonged to the defendant, but on further consideration I cannot take this view. There are other possible explanations for the insertion of this clause in the ash contracts, and I have been unable to find how the insertion of this clause in the ash trimmers' contract could profit the defendant, for it is evident that unless the ash trimmers or scavengers removed the bones and fat from the ashes they would be taken to the place of final disposition and lost to the defendant in any event. It follows that the first counterclaim must therefore be dismissed. The defendant's second counterclaim for fraud is clearly without merit. The representation that the department had delivered 345,000 tons of garbage in 1912 is part of the pro-

posal for bids, and is clearly only an estimate and the city is not responsible for its accuracy. Moreover, it is affirmatively shown by the defendant itself that the then commissioner made such estimate honestly and after examination by his subordinates. Finally, there is not a scintilla of evidence that it is untrue. Judgment is therefore directed for the plaintiff, with costs, for the amount demanded in the complaint and the counterclaims dismissed on the merits.

Judgment accordingly.